# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-1293

JACOB ROOT,

>    Plaintiff,

>    v.

OFFICER ROBERT COMSTOCK, in his individual capacity,

>    Defendant.

_____

## COMPLAINT AND JURY DEMAND

_____

Plaintiff, by and through his attorneys, Tyler A. Jolly and Harry M. Daniels, hereby files this Complaint pursuant to FRCP 15 (a) (1)(B)(2) and LCivR 15.1(a), and respectfully alleges for his Complaint and Jury Demand as follows:

## **INTRODUCTION**

*Prior to using force, an officer shall identify himself or herself as a peace officer. The officer shall give a clear verbal warning of their intent to use force.*

***Colorado Springs Police Department General Order 500 Use of Force Policy.
Effective Date: 8/2/2021***

1. On May 16, 2022, Officer Robert Comstock of the Colorado Springs Police Department shot Jacob Root in the back with his TASER weapon while Mr. Root was running away from him.  Officer Comstock did not give Mr. Root any prior warning that he would use his TASER weapon before shooting Mr. Root in the back.

2. Jacob Root was shot in the back, experienced muscular incapacitation, fell face first to the ground, and broke his neck. Jacob Root is now a quadriplegic.

3. Plaintiff seeks compensatory and punitive damages against the Defendant.

4. TRIAL BY JURY IS DEMANDED.

## JURISDICTION AND VENUE

5. This action arises under the Constitution and laws of the United States and is brought pursuant to Title 42 U.S.C. §1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §1331. Jurisdiction supporting Plaintiff's claims for attorney fees and costs is conferred by 42 U.S.C. §1988.

6. Jurisdiction for Plaintiff's supplemental state law claim, brought under Colorado state law, including the Colorado Enhance Law Enforcement Integrity Act, C.R.S §13-21-131 *et. seq.* is conferred by 28 U.S.C §1367.

7. Venue is proper in the District of Colorado pursuant to 28 U.S.C. §1391(b). All events alleged herein occurred within the State of Colorado.

## PARTIES

8. At all times pertinent to the subject matter of this litigation, Plaintiff Jacob Root (hereinafter Plaintiff or Mr. Root) was a citizen of the United States of America and a resident of, and domiciled in, the State of Colorado.

9. At all relevant times, Defendant Robert Comstock (hereinafter Defendant Comstock) was a citizen of the United States and a resident of, and domiciled in, the State of Colorado. At all times pertinent, Defendant Comstock was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement

officer, and Officer Comstock was employed by the Colorado Springs Police

Department.

## **FACTUAL ALLEGATIONS**

10. On May 16, 2022, thirteen law enforcement officers across three agencies (Colorado
Springs Police Department, El Paso County Sheriff's Office, and Colorado State Patrol)
were working together as part of the "BATTLE" (Beat Auto Theft Through Law
Enforcement) task force.  Defendant Comstock was working as a member of the
BATTLE task force as part of the Colorado Springs Police Department.

11. The task force officers had received a report that a 2017 Ford Fusion had been stolen
about 10 days prior on May 6th, 2022.  The complaining witness alleged that her car was
stolen from a parking lot near her home sometime during the night of May 6th.  The
complaining witness informed law enforcement that she had left the car unlocked with a
key fob inside.

12. On May 16, 2022, members of the task force discovered the 2017 Ford Fusion in the
parking lot of the Super 8 Motel at 1790 Aeroplaza Dr. in Colorado Springs.  The Ford
Fusion was unoccupied.

13. Rather than recover the unoccupied car, the task force members affixed a tracking device
to the car.  Thereafter, task force members followed the Ford Fusion to a Kum & Go gas
station at 3208 North Nevada Ave. and then to the Aspen Lodge Hotel at 3990 North
Nevada Ave.

14. Once at the Aspen Lodge, task force members located the Ford Fusion, which was again
unoccupied.  Rather than seize the unoccupied car, task force members waited for the
driver to return and enter the car.

15. At that point, task force members drove multiple vehicles into the parking lot of the Aspen Lodge.  The task force members attempted to block the car from leaving the parking lot.  However, Colorado Springs Police Officer Leigh Avila described the Ford Fusion being able to get around her police cruiser, colliding and causing damage to her front passenger bumper in the process.  The task force officers did not immediately pursue the Ford Fusion.

16. Officers later tracked the Ford Fusion to a Kum & Go gas station at 2588 Airport Road in Colorado Springs.  Upon arrival, the Ford Fusion was parked on the east side of the building and Mr. Root was inside the car.

17. Officers watched Mr. Root get out of the car and enter the gas station.  While Mr. Root was in the gas station, the task force members surrounded the building and parking lot. The task force officers did not enter the gas station while Mr. Root was inside.

18. Defendant Comstock parked his car at the southwest corner of the gas station and walked towards the front entrance to the gas station.

19. Mr. Root exited the gas station holding a ½ gallon of milk in his hand.  Upon seeing the officers, Mr. Root began to run past the gas pumps and towards the sidewalk on Airport Road.

20. As Mr. Root was running, Colorado State Patrol Detective Wolff shot at Mr. Root with a "Bola Wrap."  Meanwhile, Defendant Comstock began to chase Mr. Root on foot.

21. Defendant Comstock drew his TASER weapon while chasing Mr. Root from behind in the gas station lot.  Mr. Root then began running down the elevated slope dividing the gas station from the sidewalk on Airport Road.  The slope dividing the gas station from the sidewalk was covered in dirt and uneven rocks.

22. Defendant Comstock pointed his TASER weapon at Mr. Root's back as he ran down the slope. Then, without warning Mr. Root that he would use his TASER weapon, Defendant Comstock shot Mr. Root in the back.  Mr. Root experienced muscular incapacitation upon being shot with the TASER.  Mr. Root, who could not use his hands or arms to break his fall, fell head-first down the decline, across the sidewalk, and off the curb down into the street.

23. Mr. Root remained face down in the street, face bloodied and groaning in agony, as officers surrounded him and placed him in handcuffs.  Mr. Root, who broke his neck during the fall, told the officers as they handcuffed him that he could not move.

24. Mr. Root did *not* have any weapon at the Kum & Go gas station.  Mr. Root did *not* make any verbal threat that he was armed or that he intended to use force against any officer or other person at the Kum & Go gas station.  Mr. Root did *not* use or attempt to use force against any officer or other person at the Kum & Go gas station.  Mr. Root was running away from Defendant Comstock when he was shot in the back.

25. Mr. Root's injuries include but are not limited to: quadriplegia, loss of constitutional and federal rights, physical injuries, impairments and disfigurement, great pain and emotional distress, and/or aggravation of pre-existing conditions, and ongoing special damages medically/psychologically related treatment caused by the unconstitutional and moving forces concerted conduct of all the Defendant.

26. Mr. Root also continues to suffer ongoing emotional distress, with significant PTSD-type symptoms, including sadness, anxiety, stress, anger, depression, frustration, sleeplessness, nightmares and flashbacks from this unlawful use of force.

27. Mr. Root is also entitled to punitive damages on all of his claims against Defendant Comstock personally to redress his willful, malicious, wanton, reckless, and fraudulent conduct.

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Excessive Force in Violation of the Fourth Amendment
### (Jacob Root Against Defendant Comstock)

28. Plaintiff here incorporates paragraphs 1-27 of this Complaint as if fully set forth herein.

29. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress....

30. Plaintiff in this action is a citizen of the United States and Defendant Comstock is a "person" within the meaning of Title 42 U.S.C. §1983.

31. Defendant Comstock acted under color of state law, within the course and scope of his employment, and in his capacity as an officer of the Colorado Springs Police Department at all times relevant to the allegations in this Complaint.  Further, Defendant Comstock's acts or omissions were conducted within the scope of his official duties or employment.

32. At the time of the complained events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

33. Plaintiff also had the clearly established Constitutional right under the Fourth Amendment to bodily integrity and to be free from excessive force by law enforcement.

34. Any reasonable law enforcement officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time. Defendant Comstock used force against Mr. Root without warning Mr. Root that he intended to use his TASER weapon. Further, Defendant Comstock shot Mr. Root in the back with his TASER weapon while Mr. Root was on elevated, uneven surface where a fall was likely to cause substantial injury or death.

35. The Defendant's actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated these Fourth Amendment rights of Plaintiff.

36. The Defendant's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The force used by Defendant Comstock shocks the conscience and violated these Fourth Amendment rights of Plaintiff.

37. Defendant Comstock unlawfully seized the Plaintiff by means of objectively unreasonable, excessive and conscious-shocking physical force, thereby unreasonably restraining Plaintiff of his freedom.

38. Defendant Comstock's use of force caused serious bodily injury to Plaintiff. Specifically, Defendant Comstock's use of force resulted in the lifetime physical impairment and quadriplegia of Mr. Root.

39. Defendant Comstock engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

40. Defendant Comstock acted with shocking and willful indifference to Plaintiff's rights and his conscious awareness that he would cause Plaintiff severe physical and emotional injuries.

41. The acts or omissions of Defendant Comstock were moving forces behind Plaintiff's injuries.

42. The acts or omissions of Defendant Comstock as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

43. The Defendant is not entitled to qualified immunity for his actions.

44. As a proximate result of Defendant Comstock's unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Plaintiff has incurred special damages, including medical-related expenses and may continue to incur further medical and other special damages-related expenses, in amounts to be established at trial.

45. On information and belief, Plaintiff will suffer substantial lost future earnings and impaired earnings capacities from the not yet fully ascertained and in amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

46. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendant Comstock under 42 U.S.C. §1983, in that the actions of Defendant Comstock have been taken maliciously, willfully, or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

47. The intentional actions or inactions of Defendant Comstock as described herein

intentionally deprived Mr. Root of due process and of rights, privileges, and immunities

secured by the Constitution of the United States of America.

## SECOND CLAIM FOR RELIEF

### Colo. Rev. Stat. § 13-21-131

### Colorado Constitution Article II, Section 7 – Excessive Force/Unlawful Use of Force

### (Jacob Root Against Defendant Comstock)

48. Plaintiff hereby incorporates paragraphs 1-47 as if fully set forth herein.

49. Article II Section 7 of the Colorado Constitution forbids unreasonable seizures, which

includes seizures carried out with excessive force.

50. Pursuant to C.R.S. § 13-21-131:

(1) A peace officer, as defined in section 24-31-901 (3), who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution, is liable to the injured party for legal or equitable relief or any other appropriate relief.

(2)(a) Statutory immunities and statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section. The "Colorado Governmental Immunity Act", article 10 of title 24, does not apply to claims brought pursuant to this section.

(b) Qualified immunity is not a defense to liability pursuant to this section.

51. Under CRS 18-1-707(1)

Peace officers, in carrying out their duties, shall apply nonviolent means, when possible, before resorting to the use of physical force.  A peace officer may use physical force only if nonviolent means would be ineffective in effecting an arrest, preventing an escape, or preventing an imminent threat of injury to the peace officer or another person.

52. No reasonable law enforcement officer would consider the Defendant's use of his

TASER weapon, without any warning and while Mr. Root was at risk of sustaining

serious injury or death due to a fall, to have been reasonable or justified under the

circumstances.  Additionally, Defendant Comstock's actions were in blatant disregard for
his own agency's policies.

53. Defendant Comstock violated the Colorado Springs Police Department Conducted
Electrical Weapon policy by shooting his TASER weapon without warning and while
Mr. Root was on an elevated, uneven surface where a fall was likely to cause substantial
injury or death.

54. Article II Section 7 of the Colorado Constitution forbids unreasonable seizures, which
include seizures carried out with excessive force, like this one.

55. The Defendants' actions and use of force, as described herein, were also malicious and/or
involved reckless, callous, and deliberate indifference to Plaintiff's rights under Article II
Section 7 of the Colorado Constitution.

56. Defendant Comstock's unjustified, violent use of force and seizure of Mr. Root caused
Mr. Root to fall, breaking his neck, resulting in his quadriplegia.  Mr. Root experienced
great physical pain, injury, terror, and was exposed to great risk of death. Defendant
Comstock's actions and inactions are the legal, direct, and proximate cause of Plaintiff's
losses, including but not limited to, Mr. Root's permanent physical disabilities
(quadriplegia), the physical and mental pain and anguish suffered by Mr. Root during the
incident, Mr. Root's continued pain and suffering, Mr. Root's past, present, and future
medical and care costs, Mr. Root's loss of freedom and enjoyment of life, and other
compensatory and special damages including but not limited to Mr. Root's permanent
lost earnings and earnings capacity.  These actions constituted a violation of Mr. Root's
rights secured in Article II, Section 7, 18, and 25 of the Colorado Constitution.

57. Plaintiff further seeks injunctive relief against Defendant Comstock, prohibiting him
from maintaining P.O.S.T. certification.  C.R.S. § 13-21-131(1) authorizes this court,

upon a finding of Defendant's liability, to order "legal or equitable or any other appropriate relief." Plaintiff believes this injunctive relief, in the form of revoking Defendant Comstock's P.O.S.T. certification, would be particularly appropriate in this action, not only as a sanction for unlawful behavior, but also in an effort to protect the community from similar injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendant Comstock, and grant him all relief as allowed by law and equity, including by not limited to:

(a)  Declaratory and injunctive relief, as appropriate;

(b)  Economic losses on all claims allowed by law in the amount to be determined at trial;

(c)  Compensatory and consequential damages, including, but not limited to, damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount of $100,000,000;

(d)  Compensatory damages, including, but not limited to, damages for the medical costs incurred and future medical and care costs to be incurred by Mr. Root;

(e)  Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(f)  Attorneys' fees and the costs associated with this action under 42 U.S.C. §1988, C.R.S. §13-21-131, including expert witness fees, on all claims allowed by law;

(g)  Pre- and post-judgment interest at the lawful rate;

(h)  Any further relief that this Court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF DEMANDS A TRIAL TO JURY ON ALL ISSUES SO TRIABLE.**

Dated this 9th day of May, 2024.

Respectfully Submitted by Attorneys for Plaintiff:

**JOLLY LAW, P.L.L.C.**

Tyler A. Jolly, #52361
Jolly Law, P.L.L.C.
9996 W U.S. Highway 50, Unit 1090
Salida, CO 81201
Phone: 719-429-7359
Tyler@jollylawcolorado.com

**THE LAW OFFICES OF HARRY M. DANIELS, LLC**

 /s/Harry M. Daniels

Harry M. Daniels

4751 Best Road Suite 490
Atlanta, GA 30337
Tel. 678.664.8529
Fax. 800.867.5248
daniels@harrymdaniels.com