IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01293-MEH

JACOB ROOT,

Plaintiff,

v.

OFFICER ROBERT COMSTOCK, in his individual capacity, and
CITY OF COLORADO SPRINGS, a municipality,

Defendants.

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendants, Officer Robert Comstock and the City of Colorado Springs ("City") by and through the Office of the City Attorney of Colorado Springs, Colorado, move to dismiss Plaintiff's Amended Complaint (ECF 6) ("Complaint") for the reasons stated herein.

**Certification of Conferral Pursuant to Civ. Practice Standard 7.1(a)**

Pursuant to this Court's Practice Standards, undersigned conferred on this motion with Plaintiff's counsel via telephone on July 22, 2024. Plaintiff opposes the relief sought herein.

**Introduction and Allegations**

On May 16, 2022, Officer Comstock was working as a member of a taskforce dedicated to solving automotive theft crimes. ECF 6 ¶ 11.  On that day, the taskforce was tracking and following a stolen Ford Fusion with the goal of catching the driver. *Id*. ¶¶ 14, 15. To that end, the taskforce tracked the stolen Ford to the Aspen Lodge Hotel and waited for the driver to return to the car. *Id*.

When the driver returned, the taskforce moved in using several vehicles to pin the stolen Ford in and prevent it from leaving. *Id*. ¶ 16. However, the Ford fled, hitting a police cruiser as it evaded the taskforce. *Id*. Instead of chasing the stolen Ford, the taskforce continued to track and follow it until it stopped at the Kum & Go gas station on 2588 Airport Rd. *Id*. ¶ 17. There, they saw Plaintiff get out of the car and go into the convenience store. *Id*. ¶ 18. While Plaintiff was inside, the taskforce surrounded the building. *Id*. When Plaintiff exited the store and saw the officers, he began running away from them and toward Airport Road. *Id*. ¶ 20. Other officers unsuccessfully attempted to stop Plaintiff by shooting a Bola Wrap at him as he fled. *Id*. ¶ 21. Officer Comstock began chasing Plaintiff soon after he started running. *Id*. After Plaintiff successfully evaded the Bola Wrap, Officer Comstock deployed his taser, once, as Plaintiff neared Airport Road. *Id*. Plaintiff fell into the roadway and unfortunately broke his neck. *Id*. ¶ 23.

The Complaint alleges that Officer Comstock used excessive force when he tased Plaintiff without first giving a taser specific warning as he was running down an uneven surface. *Id*. ¶¶ 65, 84. Plaintiff also claims that the City failed to train its officers on the constitutional limits of using a taser on a fleeing suspect. *Id*. ¶¶ 90-99. Plaintiff's claims should be dismissed.

First, Plaintiff has failed to allege facts that show Officer Comstock's actions were unreasonable given the totality of the circumstances. Indeed, Officer Comstock deployed his taser while chasing a felony suspect, who had already evaded less intrusive arrest attempts, and who was fleeing directly toward a public road where he could have put an officer or an innocent motorist in danger of being injured in a traffic accident. As such, Officer Comstock's decision was reasonable under the rapidly evolving circumstances that confronted him. Furthermore, the taskforce's repeated efforts to capture Plaintiff, the presence of multiple officers outside the

convenience store, and the recently fired Bola Wrap, should have sufficiently warned Plaintiff that officers would use force if he continued to flee.[1] As such, Plaintiff's claims should be dismissed.

Second, Plaintiff cannot point to clearly established law that would have informed Officer Comstock that using a taser on a fleeing felony suspect who had just evaded other officers' attempts to stop him, and who was running toward a public road, violated the Fourth Amendment. Because Plaintiff cannot show that Officer Comstock violated clearly established law, he is entitled to qualified immunity and Plaintiff's federal claim against him should be dismissed.

Finally, Plaintiff has not plausibly shown that a City policy caused his alleged constitutional injury. Plaintiff attempts to meet his burden by lodging largely conclusory allegations and noting a smattering of factually dissimilar examples. Indeed, only three of Plaintiff's examples involve officers tasing a suspect, and none claim that the suspect was fleeing when the taser was used. As such, Plaintiff cannot show that the City was aware of, and deliberately indifferent to, the need for more training. Therefore, Plaintiff's claim against the City should be dismissed.

## Argument

### 1. Standard Of Review

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much

---

[1] Plaintiff only alleges Officer Comstock did not give him a taser-specific warning. ECF 6 ¶ 23. He does not allege that Officer Comstock failed to give him any other warnings, directions, or orders. *Id*.

of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting in part Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

2. **Officer Comstock is Entitled to Qualified Immunity**

"When a § 1983 defendant asserts qualified immunity, this affirmative defense "creates a presumption that [the defendant is] immune from suit." *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016). "To overcome this presumption," the plaintiff "must show that (1) the officers" alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that 'every reasonable official would have understood,' that such conduct constituted a violation of that right." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1209 (10th Cir. 2017). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Luna*, 577 U.S. at 12 (internal quotations omitted). "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments[.]" *Martinez v. Jenneiahn*, No. 22-1219, 2023 WL 4482404, at *2 (10th Cir. July 12, 2023) (internal quotations omitted). Here, the alleged facts fail to satisfy both qualified immunity prongs.

### 2.1. Officer Comstock Did Not Violate The Fourth Amendment

Allegations of excessive force are analyzed "under the Fourth Amendment's objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "[T]he Fourth Amendment does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (internal quotations omitted). When considering the reasonableness of an officer's actions, courts look at three non-exclusive factors, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. The "calculus of reasonableness must [also] embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 761 (10th Cir. 2021). "Ultimately the inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Pauly v. White*, 874 F.3d 1197, 1215 (10th Cir. 2017) (internal quotations omitted).

### 2.1.1. Officers were investigating felony level crimes

When Officer Comstock deployed his taser, he had reason to suspect Plaintiff of at least two felonies. A person commits Motor Vehicle Theft, a class five felony, if he exercises control over a motor vehicle that belongs to another person without authorization. *See* Colo. Rev. Stat. § 18-4-409 (4)(a) (2022). Vehicular Eluding, also a class five felony, requires a person to drive a motor vehicle in a reckless manner while eluding or attempting to elude a pursuing peace officer. Colo. Rev. Stat. § 18-9-116.5 (2022). According to the Complaint, Officer Comstock was part of

a taskforce that was following the stolen Ford. ECF 6 ¶¶ 12, 14. The taskforce followed the Ford to the Aspen Lodge and waited until the driver returned. [2] *Id*. ¶¶ 15, 16. When the driver got in the car, the taskforce attempted to block the Ford in. *Id*. However, the Ford escaped, striking a police cruiser as it fled the scene. *Id*. The taskforce then tracked the stolen Ford to the Kum & Go on Airport Road. *Id*. ¶ 17. There, taskforce members saw Plaintiff exit the car and go into the convenience store. *Id*. ¶¶ 17, 18. Based on these facts, it was reasonable for every taskforce member to suspect Plaintiff of stealing the Ford and using it to elude officers at the Aspen Lodge. "[O]ur binding precedent indicates the first Graham factor weighs against the plaintiff when the crime at issue is a felony[.]" *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021). As such, the first Graham factor weighs in Officer Comstock's favor.

### 2.1.2. Plaintiff posed an immediate threat to officers and other members of the public

"Our review ... looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Emmett v. Armstrong,* 973 F.3d 1127, 1135 (10th Cir. 2020). Here, the Complaint admits that officers observed Plaintiff in a stolen vehicle that had recently hit a police cruiser. ECF 6 ¶¶ 16-18. This fact alone would lead any reasonable officer to view Plaintiff as a threat, who was willing to harm others to make his getaway. *See Hayenga v. Garth*, No. 18-CV-02038-KLM, 2019 WL 2471086, at *5-6 (D. Colo. June 13, 2019) (knowledge of a suspect's outstanding weapons charges, was a sufficient threat to officer safety to warrant tasing him as he fled). Plaintiff's choice to run toward Airport Road also created an immediate safety risk for himself, officers, and any motorists

---

[2] Plaintiff is the only person that the Complaint places in or even near the stolen Ford Fusion on May 16, 2022. *Id*. ¶¶ 17-18.

traveling on the public roadway. Indeed, Plaintiff was almost to the road, and running directly at it, when Officer Comstock deployed his taser. ECF 6 ¶¶ 22-23. Based on the facts alleged, any reasonable officer would have viewed Plaintiff as an imminent threat to the safety of others. As such, this factor weighs in Officer Comstock's favor.

### 2.1.3. Plaintiff was attempting to evade officers

"Headlong flight—wherever it occurs—is the consummate act of evasion[.]" *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). The Complaint admits that Plaintiff fled from officers as soon as he saw them at the Kum & Go. ECF 6 ¶ 20. Like the previous two factors, this one weighs in Officer Comstock's favor. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 781 (10th Cir. 1993) (finding that officers' decision to use a stun gun on a resisting plaintiff was objectively reasonable even though the other *Graham* factors weighed in the Plaintiff's favor). Furthermore, Plaintiff's immediate decision to run, which was consistent with the Ford's flight from the Aspen Lodge, and his decision to keep running after another officer fired a Bola Wrap at him, forced Officer Comstock to make a "split-second" decision to use his taser as Plaintiff approached Airport Road. Indeed, the circumstances Officer Comstock faced can only be described as uncertain and rapidly changing. While Plaintiff's injuries were tragic, when viewed from the standpoint of a reasonable officer on the scene, Officer Comstock's actions were reasonable. *See Coronado v. Olsen*, No. 2:18-CV-83, 2020 WL 5821220, at *6 (D. Utah Sept. 30, 2020), *aff'd*, No. 20-4118, 2022 WL 152124 (10th Cir. Jan. 18, 2022) (finding that officers acted reasonably when they used tasers to stop the advancement of an unarmed and half naked suspect who after being tased, tragically struck his head and suffered a brain injury). Officer Comstock did not violate the Fourth Amendment.

### 2.1.4. Plaintiff was warned that officers would use force prior to being tased

The Complaint shows that on May 16, 2022, officers were engaged in an ongoing effort to arrest Plaintiff, and he was engaged in an ongoing effort to thwart their attempts. Notably, the taskforce's first attempt did not use any physical force against Plaintiff. The officers simply tried to prevent the stolen Ford from leaving the Aspen Lodge. ECF 6 ¶ 16. In response to this attempt, force was used against the officers. *Id*. The next attempt occurred at the Kum & Go on Airport Road. There, multiple officers "surrounded the building and parking lot[,]" *id.* at ¶ 18, and "[u]pon seeing [them], [Plaintiff] began to run past the gas pumps and towards the sidewalk . . . ." *Id.* at ¶ 20. Another officer fired the Bola Wrap at the fleeing Plaintiff. Though the Bola Wrap missed, its use warned Plaintiff that officers would use force if he continued to evade them. "[A] warning does not need to be specifically that officers are about to open fire." *Palacios v. Fortuna*, 61 F.4th 1248, 1259 (10th Cir. 2023) (finding in part that officer's commands to "drop the gun" were sufficient warning); *see also Hinton,* 997 F.2d at 781 (officers' use of a stun gun was objectively reasonable to subdue a disorderly plaintiff who was only warned that he would be arrested if he engaged in another outburst). Further, Plaintiff's refusal to surrender to officers' less forceful arrest attempts supports Officer Comstock's reasonable actions. *See Youngquist v. Bd. of Cnty. Commissioners*, 215CV00077BRBSMV, 2016 WL 9725196, at *6 (D.N.M. Dec. 13, 2016) (finding that there was no clearly established law "that using a Taser against a target who refused to obey verbal commands and resisted less forceful attempts to induce compliance constituted excessive force."). Finally, Plaintiff does not make any arguments or allege any facts that suggest a taser-specific warning would have been effective. *See Johnson v. Scott*, 576 F.3d 658, 661 (7th Cir. 2009) (holding that allowing a police dog to bite a felony suspect who had fled from police

was reasonable, even though no verbal warning was given and questioning whether such a warning would have made a difference). Neither can Plaintiff point to clearly established law that states such a warning was required in this situation.

### 2.2. Officer Comstock Did Not Violate Clearly Established Law

No published Tenth Circuit or Supreme Court cases put Officer Comstock on notice that using a taser in this instance, and without giving a taser-specific warning, violates clearly established law. "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotations omitted). "[C]learly established law must be particularized to the facts of the case, and should not be defined at a high level of generality." *Harris v. Mahr*, 838 F. Appx 339, 342 (10th Cir. 2020) (internal quotations omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). "Accordingly, the plaintiff must 'identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment.'" *Heard v. Dulayev*, 29 F.4th 1195, 1203 (10th Cir. 2022) (quoting *Wesby*, 583 U.S. at 64).

Here, there is not a Tenth Circuit or Supreme Court decision that states the Fourth Amendment prohibits an officer from using a taser to stop a fleeing felony suspect who had already evaded other arrest attempts. To the contrary, in a somewhat similar case, the Tenth Circuit held that the law in this area is not clearly established. *Wilson v. City of Lafayette,* 510 F. Appx 775, 776 (10th Cir. 2013) (*cert. denied*) (Gorsuch J.) (holding that an officer who tased a fleeing felony

suspect was entitled to qualified immunity, even though one of the taser probes struck the suspect in the head and killed him). Officer Comstock is entitled to qualified immunity.[3]

### 3. Plaintiff State Law Claim Against Officer Comstock Should Be Dismissed

"[W]hen determining whether the force used to effect a seizure is reasonable under article II, section 7 of the Colorado Constitution, courts should apply the 'objective reasonableness' standard articulated in *Graham*." *Woodall v. Godfrey,* 2024 COA 42, ¶ 18 (Colo. App. 2024). As discussed in detail in Section 2.1, Officer Comstock was chasing a felony suspect who had already evaded other arrest attempts. ECF 6 ¶ 16, 21. Based on the stolen Ford's flight from the Aspen Lodge, it was reasonable for Officer Comstock to believe that Plaintiff would use force to evade arrest. Furthermore, Plaintiff's decision to run toward Airport Road made him an immediate threat to the safety of others. Indeed, under the totality of the tense and rapidly changing circumstances, Officer Comstock's split-second decision was reasonable. *Graham*, 490 U.S. at 396-7.[4]

### 4. Plaintiff Has Not Stated A Plausible Claim Against The City of Colorado Springs

"[U]nder § 1983, local governments are responsible only for "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in opinion). "Where a plaintiff claims

---

[3] Plaintiff has not plausibly shown that he was on an elevated surface when he was tased. At no time relevant, was he on a surface that was above the ground. Though he alleges that he was running down a slope, he does not include facts that show the slope's height, length, or degree of incline. (ECF 6 ¶ 22). Neither has he alleged facts that show the height he fell from after being tased. *Id*. Finally, he cannot point to clearly established law that defines an elevated surface to include such a vague description of a slope. As such, he has failed to plausibly show that every reasonable officer would have understood tasing him violated the Fourth Amendment.

[4] As noted in the Complaint, Colorado law allows a peace officer to use physical force "if nonviolent means would be ineffective in effecting an arrest, preventing an escape, or preventing an imminent threat of injury to the peace officer or another person." ECF 6 ¶ 82; Colo. Rev. Stat. Ann. § 18-1-707 (2022). Here, the Complaint outlines the taskforce's ineffective attempts to make an arrest with less force. ECF 6 ¶ 16, 21. Notably, it does not allege that another less forceful attempt would have succeeded. *Id*. As such, Officer Comstock did not violate Colorado law.

that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). Therefore, to state a plausible claim against the City, Plaintiff must show that the execution of an illegal City policy inflicted his injury. *Id.* After establishing the municipal policy, "a plaintiff must demonstrate a direct causal link between the policy or custom and the injury alleged." *Id*. at 1284. Here, Plaintiff's conclusory allegations against the City do not plausibly show a custom or policy that condones a violation of any person's constitutional rights. ECF 6 ¶¶ 43-58, 90-99. Plaintiff also cannot show a "direct causal link" between his injury and any City policy. As such, his third claim should be dismissed.

### 4.1. The Complaint Does Not Establish A Plausible Failure To Train Claim

Plaintiff's primary allegation against the City is that it fails to properly train its police officers. ECF 6 ¶¶ 44, 46-47, 49-55, 91-93, 95. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick,* 563 U.S. at 61. "[T]he City cannot be held liable for its failure to train or supervise its [police officers] unless the City's policymakers can reasonably be said to have been deliberately indifferent to the need for further training or supervision." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir. 2010) (internal quotations omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[.]" *Waller,* 932 F.3d at 1284 (quoting *Connick,* 563 U.S. at 61). "[A] pattern of similar constitutional violations by untrained employees is ordinarily necessary: Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have

deliberately chosen a training program that will cause violations of constitutional rights." *Waller*, 932 F.3d at 1285 (internal quotations omitted). Further, the alleged lack of training must "bear a very close causal connection to the violation of constitutional rights[.]" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring in part).

Here, Plaintiff cannot point to a single similar incident that would have instructed the City that additional taser training was needed. Indeed, Plaintiff only includes three examples, over a thirteen-year period, that involve officers deploying a taser.[5] ECF 6 ¶¶ 37, 39, 43. None of those examples allege that an officer tased a fleeing suspect, let alone one fleeing over uneven ground. *Id*. Neither do they allege that any officer failed to warn any suspect before deploying their tasers. *Id*. Because Plaintiff cannot point to factually similar cases, he cannot show the City's training program is deficient.[6] Neither can he show that the City's training program caused his specific injury. *Bauer v. City & Cnty. of Denver*, 642 F. Appx 920, 925 (10th Cir. 2016) ("[A] plaintiff

---

[5] Plaintiff's examples are distinctly different. Plaintiff's first example does not involve a taser and does not mention the crimes the officers were investigating. ECF 6 ¶ 35. Even so, he admits the officers first ordered the suspect to stop before shooting. *Id*. Plaintiff's second, seventh, and eighth examples do not involve a taser or a fleeing suspect. *Id*. ¶¶ 36, 41-42. In Plaintiff's third example, the officers, who were investigating a call about an individual with a firearm, gave the suspect, who was not running away, a clear warning before using the taser. *Id*. In Plaintiff's fourth example, which did not involve a taser or a fleeing suspect, the claims of excessive force were dismissed. *Id*. ¶ 38; *See Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044, 1063 (D. Colo. 2021). Plaintiff's fifth example does not allege a tasing while the suspect was in flight or a failure to warn. ECF 6 ¶ 39. Plaintiff also fails to note that the Tenth Circuit granted the involved officers qualified immunity. *See Est. of Melvin, v. City of Colorado Springs*, No. 23-1070, 2023 WL 8539921, at *6 (10th Cir. Dec. 11, 2023). In the sixth example, the officers did not tase or chase the suspects. ECF 6 ¶ 40. Finally, Plaintiff's ninth example, which occurred approximately 15 years ago, does not allege a flight or a failure to warn. *Id*. ¶ 43.

[6] Plaintiff also alleges that Officer Comstock shot a man in 2021 and that the City determined that he had acted within policy limits. ECF 6 ¶ 48. Plaintiff includes no other details about this incident. The scant facts alleged do not even suggest that Officer Comstock used excessive force or that the City condoned a constitutional violation. Notably, Plaintiff does not make either allegation.

cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of [his] specific injury or that it was the moving force behind [his] deprivation.") (internal quotations omitted)). Finally, Plaintiff's inability to point to factually similar cases, prevents him from plausibly showing the City was deliberately indifferent to the need for more training. *Id*.

### 4.1.1. Plaintiff does not allege a patently obvious defect in the City's training program

"Evidence of a pre-existing pattern of violations is only unnecessary in a narrow range of circumstances, however rare, in which the unconstitutional consequences of a failure to train are highly predictable and patently obvious." *Waller,* 932 F.3d at 1285 (internal quotations omitted). Here, Plaintiff does not identify any deficiency in, or discuss any portion of, Officer Comstock's training. Without discussing the training the City provided, Plaintiff cannot plausibly show that it was deliberately indifferent to a patently obvious defect in its taser training program. *Irizarry v. City & Cnty. of Denver*, No. 21-CV-01490-PAB-SKC, 2023 WL 2528782, at *12 (D. Colo. Mar. 15, 2023) (allegations which do not show how a police officer was trained, who trained him, or how his training is deficient, do not state a plausible claim for relief).

### 4.2. Plaintiff Has Not Shown The Existence Of A Widespread Custom

For the same reasons as stated in section 4.1, Plaintiff's single conclusory allegation that an unofficial widespread custom or practice caused his injuries is without merit. ECF 6 ¶ 45. Indeed, his inability to point to other similar examples "seriously undermines [this] claim." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (Noting that when "attempting to prove the existence of such a 'continuing, persistent and widespread' custom, plaintiffs most

commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way.").

### 4.3. Plaintiff Has Not Shown An Official Policy Condoning Or Ratifying Excessive Force

Plaintiff's conclusory allegations that the City maintains a general policy that condones and ratifies acts of excessive force is insufficient to state a claim. ECF 6 ¶¶ 32, 52, 56, 93, 94. Indeed, these allegations present several problems for Plaintiff. First, the Complaint fails to identify any policy that condones excessive force. To the contrary, the Complaint quotes the City's use of force policy favorably.[7] *Id*. p. 1. Second, Plaintiff has not pled sufficient facts to support his ratification theory. "[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson,* 627 F.3d at 790. Here, none of Plaintiff's examples name a final policymaker, let alone claim that one approved any officer's unconstitutional act and the basis for the act. ECF 6 ¶¶ 35-43. Instead, Plaintiff simply claims that the City, CSPD, and the "Chief of Police," ratified dissimilar constitutional violations by failing to investigate, counsel, and discipline an unknown number of unnamed officers. ECF 6 ¶ 94. Plaintiff's vague and conclusory assertions fall far short of establishing a viable ratification theory. *See Rehberg v. City of Pueblo*, No. 10-CV-00261-LTB-KLM, 2012 WL 1326575, at *7 (D. Colo. Apr. 17, 2012) (finding in part that a plaintiff could not support a ratification theory by alleging an officer's acts were ratified by the town of Pueblo and the officer's "supervisory officers"). Finally, Plaintiff cannot plausibly

---

[7] The Complaint also notes that the City has a policy related to taser use. ECF 6 ¶ 84. However, Plaintiff does not allege that this policy is unconstitutional or that it causes unconstitutional behavior. *Id*.

show that such a general policy was the moving force behind his specific injury. *Martinez v. City & Cnty. of Denver,* No. 11-CV-00102-MSK-KLM, 2013 WL 5366980, at *15 (D. Colo. Sept. 25, 2013) ("A broad contention that Denver's policies encourage the use of excessive force generally is precisely the sort of generalized proof of causation that *Harris* deems insufficient.").

## Conclusion

WHEREFORE, for the above reasons, Defendants respectfully request that this Honorable Court enter an order dismissing Plaintiff's Complaint, in its entirety, with prejudice, and for any further relief this Court deems appropriate.

Respectfully submitted this 29th day of July, 2024.

OFFICE OF THE CITY ATTORNEY
Wynetta P. Massey, City Attorney

/s/ Brian Stewart
Brian Stewart, Attorney
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Telephone: (719) 385-5909
Facsimile: (719) 385-5535
Brian.Stewart@coloradosprings.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July, 2024, the foregoing **DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** was filed using the CM/ECF e-filing system, which will send notice to the following:

Tyler A. Jolly
Jolly Law, P.L.L.C.
9996 W U.S. Highway 50, Unit 1090
Salida, CO  81201

Harry M. Daniels
The Law Offices of Harry M. Daniels, LLC
4751 Best Road, Suite 490
Atlanta, GA  30337


*/s/ Amy McKimmey*
Paralegal