IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01293-DDD-MEH

JACOB ROOT,

     Plaintiff,

v.

OFFICER ROBERT COMSTOCK, in his individual capacity,
and CITY OF COLORADO SPRINGS, a municipality,

     Defendants.

---

## PLAINTIFF JACOB ROOT'S  RESPONSE TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

---

NOW COMES Plaintiff Jacob Root ("Mr. Root or Plaintiff") by and through undersigned counsel, responds to the Defendants' motion to dismiss Plaintiff's Amended Complaint (ECF 6) ("Complaint") for the reasons stated herein the Court should deny the Defendants' motion.

### PERTINENT ALLEGATIONS AND BACKGROUND

On May 16, 2022, Defendant Comstock drew his TASER weapon while chasing Mr. Root from behind in the gas station lot. Mr. Root then began running down an elevated slope, which divided the gas station from the sidewalk on Airport Road. The slope dividing the gas station from the sidewalk was covered in dirt and uneven rocks.  Defendant Comstock pointed his TASER weapon at Mr. Root's back as he ran down the elevated slope. Then, without warning Mr. Root that he would use his TASER weapon, Defendant Comstock shot Mr. Root in the back. Mr. Root experienced muscular incapacitation upon  being shot with the TASER. Mr. Root, who could not use his hands or arms to break his fall, fell head-first down the slope, across the sidewalk, and off the curb down into the street.  Mr. Root remained face down in the street, face bloodied and

groaning in agony, as officers surrounded him and placed him in handcuffs. Mr. Root, who broke

his neck during the fall, told the officers as they handcuffed him that he could not move. Mr. Root

did not have a weapon at the Kum & Go gas station. Mr. Root did not make any verbal threat that

he was armed or that he intended to use force against any officer or other person at the Kum & Go

gas station. Mr. Root did not use or attempt to use force against any officer or other person at the

Kum & Go gas station. Mr. Root was running away from Defendant Comstock when he was shot

in the back. Mr. Root's injuries include but are not limited to: quadriplegia, loss of constitutional

and federal rights, physical injuries, impairments and disfigurement, great pain and emotional

distress, and/or aggravation of pre-existing conditions, and ongoing special damages

medically/psychologically related treatment caused by the unconstitutional and moving forces

concerted conduct of all the Defendants.  Further, the Plaintiff alleges that Defendant Colorado

Springs is municipally liable for Defendant Comstock's actions and has a custom and practice of

using and ratifying excessive force. The Defendants asserts their motion to dismiss should be

granted based on the following grounds:

1. Plaintiff has failed to allege facts that show Defendant Comstock's actions were unreasonable given the totality of the circumstances.

2. Plaintiff cannot point to clearly established law that would have informed Defendant Comstock his actions were unconstitutional.

3. Plaintiff has not plausibly shown that a City policy caused his alleged constitutional injury.

However, Plaintiff's claims are plausible as a matter of law and should not be dismissed.

ARGUMENT AND CITATION OF AUTHORITY

**I.      Standard of Review**

In reviewing a motion to dismiss, "all well-pleaded factual allegations in the ... complaint are accepted as true and viewed in the light most favorable to the nonmoving party." Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir.2006) (quotation omitted).  Because the Court is reviewing the qualified immunity issue in the context of a motion to dismiss, the Court must bear in mind the standard governing motions to dismiss, which the Supreme Court addressed in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662,  (2009). See Brown v. Montoya, 662 F.3d 1152, 1162-63 (10th Cir. 2011). In Twombly, the Court held that, to survive a motion to dismiss, plaintiffs' pleadings must "nudge[ ] their claims across the line from conceivable to plausible." 550 U.S. at 570.  In Iqbal, the Court applied Twombly to a motion to dismiss based on qualified immunity in a Bivens action. Iqbal formulated the test in this way:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Iqbal at. 678.

**II.     Officer Comstock is Not Entitled to Qualified Immunity at this stage of litigation.**

Government defendants sued under § 1983 in their individual capacities have qualified immunity: 'government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Estate of Melvin v. City of

Colo. Springs, No. 23-1070, at *12 (10th Cir. Dec. 11, 2023). Thus, "[o]nce an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." Id. Under the second prong, ordinarily, "[i]t is clearly established that specific conduct violates a constitutional right when Tenth Circuit or Supreme Court precedent would make it clear to every reasonable officer that such conduct is prohibited. Perea v. Baca, 817 F.3d 1198, 1204 (10th Cir. 2016).

However, because excessive force jurisprudence requires an all-things-considered inquiry with 'careful attention to the facts and circumstances of each particular case,' there will almost never be a previously published opinion involving exactly the same circumstances." Casey v. City of Federal Heights, 509 F.3d 1278, 1284 (10th Cir. 2007) (quoting Graham v. Connor, 490 U.S. 386, 396(1989).; see also Estate of Melvin, No. 23-1070, at *13. Thus, the Court's analysis is not "a scavenger hunt for prior cases with precisely the same facts" and is instead an "inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." Id.; see also Truman v. Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021); Estate of Melvin, No. 23-1070, at *13. Notably, "binding" precedent holding the specific conduct unconstitutional is not the standard for qualified immunity. See Anderson v. Creighton, 483 U.S. 635, 640 (1987). That clarity can come from either "controlling authority or a robust consensus of cases of persuasive authority," (quoting District of Columbia v. Wesby, 583 U.S. 48, 63 (2018). In an obvious case, even general standards "without a body of relevant case law" suffice. Brosseau v. Haugen, 543 U.S. 194, 199 (2004). Simply put, "it is not necessary to find a 'case directly on point' in order to show that the law governing a plaintiff's claim is clearly established. Some measure of abstraction and common sense is required with respect to police methods and weapons ...." Terebesi v.

Torreso, 764 F.3d 217, 237 n.20 (2d Cir. 2014) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).  Indeed, a contrary conclusion would give officers "a free pass to use" weapons "in any manner" they see fit "until a case from the Supreme Court or from this circuit involving that particular weapon is decided."  Phillips v. Comm. Ins. Corp., 678 F.3d 513, 528 (7th Cir. 2012). Qualified immunity demands no such thing. A prior case need not be exactly parallel to the conduct here for the officials to have been on notice of the clearly established law. All the same, the Supreme Court has cautioned circuit courts 'not to define clearly established law at a high level of generality, but to focus on whether the violative nature of particular conduct is clearly established. Perea, 817 F.3d at 1204 (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015).; see also Estate of Melvin, No. 23-1070, at *13. In Casey the Court held, "We cannot find qualified immunity wherever we have a new fact pattern."  509 F.3d at 1284. Further, the Supreme Court has "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir. 2006). A general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though [such conduct] has not previously been held unlawful." Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006).  The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

### A.  Reasonableness test in excessive force cases

"All claims that law enforcement officials have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are properly

analyzed under the Fourth Amendment's "objective reasonableness" standard" Graham v. Connor, 490 U.S. 386 (1989). "This inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Pearson v. Callahan, 555 U.S. 223, 244 (2009) (quoting Wilson v. Layne, 526 U.S. 603, 614,  (1999). "The precise question asked in an excessive force case is "whether the officers' actions are `objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. Reasonableness is evaluated under a totality of the circumstances approach, which requires that we consider and balance the following factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. The Tenth Circuit  assess objective reasonableness based on "whether the totality of the circumstances justified the use of force and pay careful attention to the facts and circumstances of the particular case. Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008);  Cordova v. Aragon, 569 F.3d 1183, 1188 (10th Cir. 2009) (describing the reasonableness test as requiring a court to "slosh our way through the fact-bound morass of reasonableness" by "conducting [a] balancing act" (internal quotation marks omitted)).Further, the Tenth Circuit recognize that officers may have "to make split-second judgments in uncertain and dangerous circumstances." Phillips v. James, 422 F.3d 1075, 1080 (10th Cir. 2005) (internal quotation marks omitted); see also Cordova, 569 F.3d at 1188. If a particular use of force is considered deadly force, then an officer's use of that force is reasonable only "if a reasonable officer in Defendants' position would have had probable cause to believe that there was a *threat of serious physical harm to themselves* or to others." Estate of Larsen, 511 F.3d at 1260 (internal quotation marks omitted); see Tennessee v. Garner, 471 U.S. 1, 11, (1985)

Deadly force is such force that "create[s] a substantial risk of causing death or serious bodily harm." Jiron v. City of Lakewood, 392 F.3d 410, 415 n. 2 (10th Cir. 2004) (internal quotation marks omitted); see Ryder v. City of Topeka, 814 F.2d 1412, 1417 n. 11 (10th Cir. 1987). In assessing the degree of threat the suspect poses to the officers, we consider factors that include, but are not limited to: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." Estate of Larsen, 511 F.3d at 1260.

**B. Tasing a person in an elevated position or a location where a fall may cause substantial injury or death; was forbidden and constitutionally unreasonable.**

It has been clearly established, if a particular use of force is considered deadly force, then an officer's use of that force is reasonable only "if a reasonable officer in Defendants' position would have had probable cause to believe that there was a *threat of serious physical harm to themselves* or to others." Estate of Larsen, 511 F.3d at 1260 (internal quotation marks omitted); see Tennessee v. Garner, 471 U.S. 1, 11, (1985) "It is widely known among law enforcement that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall." Baker v. Union Twp., 587 F. App'x 229, 10 (6th Cir. 2014). (Police tase an individual who is positioned on an elevated surface at a height that carries with it a risk of serious injury or death, causing the individual to fall. *Id.* at 234.)). In fact, on the date in question, the Colorado Springs Police Department Standard Operating Procedures *forbids tasing an individual in an elevated position or in a location where a fall may cause substantial injury or death*. "The fact that the use of a taser – which is ordinarily a non-lethal weapon – may, under certain circumstances, create a risk of serious injury or death that could make the use of the taser under those circumstances constitutionally unreasonable." Peroza-Benitez v. Smith, 994

F.3d 157, 168 (3d Cir. 2021) (quoting Martin v. City of Reading, 118 F. Supp. 3d 751, 762 n.8

(E.D. Pa. 2015).  Colorado Springs Police Department Standard Operating Procedures-DL-705-01

Conducted Electrical Weapons (CEW)-Section 700 -Force, Detention, and Arrest (Active

5/4/2020)[1] states:

> *LIMITATIONS ON USE OF CEW*
>
> - Officers and marshals are prohibited from using a CEW on a driver of a running motor vehicle.
>
> - Absent exigency or supervisory approval, officers and marshals will not deploy CEW in the following circumstances:
>   - When a person is handcuffed
>   - When a person is in an elevated position or a location where a fall may cause substantial injury or death
>   - When near flammable liquids or fumes
>   - When a person is in deep water
>   - When a person is pregnant, elderly, intellectually or developmentally disabled, a young child, and/or visibly frail
>   - When a person is a passenger in a running motor vehicle
>   - In a drive stun mode, due to the increased likelihood of causing injury
>   - In a crowd control situation
>   - More than one officer or marshal deploying a CEW on the same person at the same time
>   - When a person offers only passive resistance

Further, it is widely known among law enforcement and was even a subject of [the officer's] police

training that tasers should not be employed against suspects on elevated surfaces because of the

risk of serious injury from a resulting fall."); Negron v. City of New York , 976 F. Supp. 2d 360,

368, 371 (E.D.N.Y. 2013) (noting that "[the officers] should have known" that tasing the plaintiff

– who was "standing on a small, unenclosed ledge ten feet off the ground" – "was unreasonable

even despite the lack of precedent involving tasers used under similar circumstances"); Rockwell

v. Rawlins , No. 13-cv-3049, 2014 WL 5426716, at *4 (D. Md. Oct. 23, 2014). In Martin, police

---

[1] Exhibit 1.

pursued the plaintiff to a highway overpass, from which the plaintiff fell nearly 40 feet onto concrete after being tased by a City of Reading police officer. 118 F. Supp. 3d 751, 756-58 (E.D. Pa. 2015). The plaintiff brought a § 1983 action against the police officer for use of excessive force in violation of his Fourth Amendment rights, alleging that the police officer's deployment of the Taser caused him to fall from the overpass. Id. At summary judgment, rather than focusing "on the qualitative characteristics of the particular type of weapon [the police officer] chose to employ," the district court instead considered "whether a reasonable officer would understand that attempting to effect Plaintiff's arrest by using force that carried with it a risk of serious injury or death violated Plaintiff's rights." Id. at 765-66. Answering in the affirmative, the district court – viewing the facts in the light most favorable to the plaintiff as the non-moving party – denied the police officer summary judgment on the grounds of qualified immunity. In support of its finding, the court in Martin cited a number of similar excessive force cases where courts have denied (or affirmed the denial of) a defendant's motion for summary judgment on the grounds of qualified immunity based on the following fact pattern: Police tased an individual who is positioned on an elevated surface at a height that carries with it a risk of serious injury or death, causing the individual to fall. Id. at 766-67 ; accord Baker v. Union Twp., 587 F. App'x 229, 234 (6th Cir. 2014) ("It is widely known among law enforcement and was even a subject of [the officer's] police training that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall."); Negron v. City of New York, 976 F. Supp. 2d 360, 368, 371 (E.D.N.Y. 2013) (noting that "[the officers] should have known" that tasing the plaintiff – who was "standing on a small, unenclosed ledge ten feet off the ground" – "was unreasonable even despite the lack of precedent involving tasers used under similar circumstances"); Rockwell v. Rawlins , No. 13-cv-3049, 2014 WL 5426716, at *4 (D. Md. Oct. 23, 2014) ("While tasers may

not constitute deadly force in some scenarios, deadly force was clearly used in this case. [The plaintiff] was standing on a narrow second-story ledge/roof, and there is no evidence to suggest that a reasonable police officer would not have expected [the plaintiff] to fall if he was tased.") (footnote omitted); Peabody v. Perry Twp., No. 10-cv-1078, 2013 WL 1327026, at *5-7 (S.D. Oh. Mar. 29, 2013) (noting that a reasonable jury could determine that the deployment of a taser against an individual climbing an eight-foot fence could constitute deadly or lethal force); Snauer v. City of Springfield , No. 09-cv-6277, 2010 WL 4875784, at *5 (D. Or. Oct. 1, 2010), report and recommendation adopted by district judge 2010 WL 4861135 (D. Or. Nov. 23, 2010) ("[The officer] was trained in the use of a taser and knew well that a tasered suspect becomes temporarily paralyzed. ... It does not take a panel of judges to alert a reasonable police officer that causing a [temporarily] paralyzed man to tumble headfirst onto the ground from a platform six to seven feet above the ground creates a substantial risk of causing death or serious bodily injury.") (citation and internal quotations omitted); . Harper v. Perkins, 459 F. App'x 822, 827-28 (11th Cir. 2012) (affirming district court's denial of defendant's motion to dismiss on the grounds of qualified immunity because inter alia the defendant's force "was obviously and clearly excessive," particularly given that "a taser was used on a person standing with his hands in the air at least four feet off the ground in a tree"); Cook v. Riley, No. 11-cv-24, 2012 WL 2239743, at *12 (M.D.N.C. June 15, 2012) (recommending denial of summary judgment on the grounds of qualified immunity in part because "[the plaintiff] was perched on a small platform 15 feet in the air at the time of the TASER deployment [and a] factfinder could conclude that a reasonable officer would foresee that utilizing a TASER under such circumstances could cause the targeted individual to fall and thereby to suffer serious harm ....") (internal citations omitted).  In Bradley v. Benton, 10 F.4th 1232, 1237 (11th Cir. 2021), Officer Benton testified that he was aware of and understood police

department policy that a taser "will cause most everyone to fall and therefore should not be used when the risk of falling would likely result in death[.]" Id. He also agreed that under that policy it was "not appropriate" to use a taser "if someone is at an elevated height[.]" Id. Tracy Rucker, the master instructor on taser use for DeKalb County, testified that a person who is tased will experience "neuromuscular incapacitation" and will be paralyzed from pain for around five seconds. Id. He also testified that he instructed DeKalb County officers that tasers could be deadly when the target is in a dangerous position such as an elevated height. Id. And he affirmed that even a fall "from a level that's not that high" can cause serious injury when the victim has been incapacitated by a taser. Id. Moreover, again taking the facts in the light most favorable to the plaintiffs, Officer Benton knew that he was using deadly force when he tased Robinson on top of the wall. He had been trained that a person who is tased will experience "neuromuscular incapacitation" and will be paralyzed from pain for around five seconds; more than enough time for Robinson to lose his balance and fall from atop the wall. In his deposition, Officer Benton was asked if he understood department policy that a taser "should not be used when the risk of falling would likely result in death, for example, on a roof or next to a swimming pool." He replied that he did. He was then asked if he agreed that it was "not appropriate" to use a taser "if someone is at an elevated height[.]" He replied, "I agree." When deciding whether to grant summary judgment on an excessive force claim, relevant facts include departmental instructions and other well-known police guidance). Bradley at, 1241. A use of force is considered deadly when it poses "a substantial risk of causing death or serious bodily harm." Robinette v. Barnes, 854 F.2d 909, 912 (6th Cir. 1988) (quoting Model Penal Code § 3.11(2) (Am. L. Inst., Proposed Official Draft 1962)). Even a normally non-lethal weapon "qualif[ies] as 'deadly force' " under certain circumstances, "especially if an officer hits a suspect in the head." Gambrel v. Knox County, 25 F.4th 391, 401 (6th Cir. 2022)

(quoting *Robinette*, 854 F.2d at 912) (collecting cases). As sated above, that tasing in risky situations may cause significant harm. *See*, *e.g.*, *Baker at* 234  ("It is widely known among law enforcement . . . that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall."). In the matter at hand the sole inquire is whether Officer Comstock's action of tasing Mr. Root  in an elevated position or a location where a fall may cause substantial injury or death was forbidden and constitutionally unreasonable per the Amended Complaint.  In their brief in support of their MTD, the Defendants argued that Officer Comstock's action was not unreasonable based of the   Graham Factors.  However, the real question, is whether Officer Comstock's action of tasing Mr. Root while he was in an elevated position that tantamount to *deadly* force reasonable under the circumstance. "[T]he term [deadly force] encompasses a range of applications of force, some more certain to cause death than others. It includes force that is 'likely' to cause serious injury or death...." Cordova v. Aragon, 569 F.3d 1183, 1189 (10th Cir. 2009). "The reasonableness of [the officers'] actions depends both on whether the officers were in danger at the precise moment that they used force and on whether [their] own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." Reavis Estate of Coale v. Frost, 967 F.3d 978, 985 (10th Cir. 2020) (quotation omitted). As stated above,  "it is widely known among law enforcement that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall." Baker v. Union Twp., 587 F. App'x 229, 10 (6th Cir. 2014). (Police tase an individual who is positioned on an elevated surface at a height that carries with it a *risk of serious injury or death*, causing the individual to fall. *Id.* at 234.)). Further, the Colorado Springs Police Department Standard Operating Procedures forbids tasing an individual in an elevated position or in a location where a fall may cause *substantial injury or death*. In accepting the Plaintiff's

allegations in his **Amended Complaint** as true, the Plaintiff's allegations shatter the pleading standard under FRCP 8 and state a claim for relief that is plausible on its face. Upon a cursory review of the Amended Complaint, this Court will find that Officer Comstock drew his TASER weapon while chasing Mr. Root from behind in the gas station lot. ( [Doc. 6] Amended Compl. at ¶ 22).  Mr. Root then began running down the elevated slope, which divided the gas station from the sidewalk on Airport Road. (Id). The slope dividing the gas station from the sidewalk was covered in dirt and uneven rocks. (Id).  Next, Officer Comstock pointed his TASER weapon at Mr. Root's back as he ran down the slope. (Id at ¶ 23).  Then, without warning Mr. Root that he would use his TASER weapon, Defendant Comstock shot Mr. Root in the back. Mr. Root experienced muscular incapacitation upon being shot with the TASER. (Id).  Mr. Root, who could not use his hands or arms to break his fall, fell head-first down the slope, across the sidewalk, and off the curb down into the street. (Id).  Mr. Root remained face down in the street, face bloodied and groaning in agony, as officers surrounded him and placed him in handcuffs. (Id at ¶ 24).   Mr. Root, who broke his neck during the fall, told the officers as they handcuffed him that he could not move. (Id).  Mr. Root did *not* have any weapon at the Kum & Go gas station. (Id at ¶ 25).   Mr. Root did *not* make any verbal threat that he was armed or that he intended to use force against any officer or other person at the Kum & Go gas station. (Id).   Mr. Root did *not* use or attempt to use force against any officer or other person at the Kum & Go gas station. Mr. Root was running away from Defendant Comstock when he was shot in the back. (Id). Finally, if this Court  accept the Plaintiff's Amended Complaint as alleged and   draw all reasonable inference that Officer Comstock is liable for the misconduct alleged, at minimum this Court should determine that Officer Comstock's action of tasing Mr. Root  in an elevated position or a location where a fall may cause substantial injury or death and failure to warn was forbidden and constitutionally

unreasonable per the Amended Complaint.  Thus, Officer Comstock would not be entitled to qualified immunity at this stage of this litigation. Further,  based on the above authority and given the egregious nature of Officer Comstock's action and lack of a reasonable or legitimate justification for using excessive force, Officer Comstock would not be entitled to qualified immunity under either  Estate of Larsen ex rel. Sturdivan or Cordova  at this stage of this litigation.

### III.    Plaintiff State Law Claim Against Officer Comstock Should <u>NOT</u> Be Dismissed

Motions to dismiss under Colorado Rule of Civil Procedure are governed by Rule 12(b)(5).  Defendants have not asserted C.R.C.P. 12(b)(5) as a grounds for dismissal of Plaintiff's state law claim. Nevertheless, C.R.C.P. 12(b)(5) tests the legal sufficiency of a complaint to determine whether a plaintiff has asserted a claim upon which relief can be granted. Hemmann Mgmt. Servs. v. Mediacell, Inc., 176 P.3d 856, 858 (Colo. App. 2007).

Under Colorado State law, Courts must accept as true all averments of material fact and view the allegations of the complaint in the light most favorable to the plaintiff. Lopez v. Trujillo, 399 P.3d 750 (Colo. App. 2016).  Further, motions to dismiss under C.R.C.P. 12(b)(5) are viewed with disfavor. Fluid Tech., Inc. v. CVJ Axles, Inc., 964 P.2d 614, 616 (Colo. App. 1998); See Also Kerber v. Qwest Group Life Ins. Plan, 647 F.3d 950, 959 (10th Cir. 2011) ("There is a strong presumption against the dismissal of claims under [Fed. R. Civ. P. 12(b)(6)/C.R.C.P. 12(b)(5)] and a court must accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'"). Further, though the Defendant does not raise the issue of qualified immunity with respect to Plaintiff's state law cause of action, C.R.S. § 13-21-131 states unequivocally, "Qualified immunity is ***not*** a defense to liability pursuant to this section." (emphasis added).

Here, Officer Comstock's action of tasing Mr. Root while he was in an elevated position that tantamount to *deadly* force was not reasonable under the circumstance. As stated above, the term deadly force includes force that is 'likely' to cause serious injury or death. See <u>Cordova</u> at 1189.  Further, reasonableness of the officers' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether their own reckless or deliberate conduct during the seizure unreasonably created the need to use such force. <u>Reavis Estate of Coale v. Frost</u>, 967 F.3d 978, 985 (10th Cir. 2020) (quotation omitted). As stated above, "it is widely known among law enforcement that tasers should not be employed against suspects on elevated surfaces because of the risk of serious injury from a resulting fall." <u>Baker v. Union Twp.</u>, 587 F. App'x 229, 10 (6th Cir. 2014). (Police tase an individual who is positioned on an elevated surface at a height that carries with it a *risk of serious injury or death*, causing the individual to fall. *Id.* at 234.)). Notably, the Court does have to travel away from the Colorado Springs Police Department's Standard Operating Procedures to determining whether Officer Comstock's actions were reasonable under the circumstances. As stated above, the Colorado Springs Police Department CEW policy clear forbids tasing an individual in an elevated position or in a location where a fall may cause *substantial injury or death*. In accepting the Plaintiff's allegations in his Amended Complaint as true, the Plaintiff's allegations shatter the pleading standard under FRCP 8 and Colorado pleading standard and stated a claim to relief that is plausible on its face the Officer Comstock's actions were unreasonable. Thus, the Plaintiff's State Law claim against Officer Comstock should <u>not</u> be dismissed at this stage.  Finally, the Defendants argue in a footnote that the Plaintiff has not plausibly shown that he was on an elevated surface when he was tased. Further, the Defendants argue that the Plaintiff has not alleged facts that show the height he fell from after being tased. <u>Id</u>. Unfortunately for the Defendants at this stage in litigation, the

Plaintiff does not have to show or prove anything. Instead, the Plaintiff only has to allege a

plausible claim. Here, the Plaintiff has clearly alleged that he was tased while he was an elevated

position. Additionally, the Plaintiff alleged he could not use his hands or arms to break his fall, fell

head-first down the decline, across the sidewalk, and off the curb down into the street. Notably,

the Colorado Springs Police Department Standard Operating Procedures does not place a height

requisite to constitute as an elevated position. Further, the policy also forbids tasing a person in a

location where a fall may cause substantial injury or death regardless of if the person was in an

elevated position at the time they were tased. The Defendants also argued in a footnote that the

Colorado law allows a peace officer to use physical force "if nonviolent means would be

ineffective in effecting an arrest, preventing an escape, or preventing an imminent threat of injury

to the peace officer or another person.". Colo. Rev. Stat. Ann. § 18-1-707 (2022). However, Colo.

Rev. Stat. Ann. § 18-1-707 also states:

> A peace officer is justified in using deadly physical force to make an arrest only
> when all other means of apprehension are unreasonable given the circumstances
> and: **(a)** The arrest is for a felony involving conduct including the use or threatened
> use of deadly physical force; **(b)** The suspect poses an immediate threat of death or
> serious bodily injury to the peace officer or another person; **(c)** The force employed
> does not create a substantial risk of injury to other persons.

In  construing all allegation in favor of the Plaintiff at the MTD stage, Mr. Root did *not* have any

weapon at the Kum & Go gas station. Mr. Root did *not* make any verbal threat that he was armed

or that he intended to use force against any officer or other person at the Kum & Go gas station.

Mr. Root did *not* use or attempt to use force against any officer or other person at the Kum & Go

gas station. Mr. Root was running away from Defendant Comstock when he was tased in the back

by Officer Comstock. Thus, Officer Comstock was not justified in using deadly physical force to

arrest Mr. Root only when all other means of apprehension are unreasonable given the

circumstances. Thus, based on FRCP 8 and Colorado pleading standard,  the Plaintiff's state law

claim against Officer Comstock should <u>not</u> be dismissed.

## IV.    **Plaintiff <u>Has</u> Stated a Plausible Claim Against the City of Colorado Springs**

Municipalities can be sued directly under § 1983 for monetary, declaratory, or injunctive

relief where the action that is alleged to be unconstitutional implements or executes

a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that

body's officers." <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658, 690  (1978). "[I]t is when

execution of a government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy, inflicts the injury that the government

as an entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694. In his Amended Complaint for

Damages, the Plaintiff alleged several incidents where the CSPD officers clearly committed

constitutional and use of force policy violations, and that theCity of Colorado Springs through its

"policy makers" have ratified the violation of their officers. See Amended Compl. ¶¶ 29-58.

### A.  **Unlawful Policy by Acts of Official Policy Maker**

The Plaintiff alleges that the Chief of Police for the City of Colorado Springs  is an official

policymaker for the City of Colorado Springs. See Amended Compl. ¶¶ 29-58.  The Tenth Circuit

has held previously that a police commander can occupy a policymaking position. <u>Meade v.

Grubbs</u>, 841 F.2d 1512, 1530 (10th Cir. 1988). The Plaintiff also alleges that through the Chief of

Police and through his decision making has continually ratified the excessive force of  CSPD

officers through failure to investigate, failure to counsel, and failure to discipline officers who use

excessive force. See Amended Compl. ¶¶ 29-58.  See <u>Varela v. Jones</u>, 746 F.2d 1413, 1418 (10th

Cir. 1984) ("custom or policy may include [municipality's] continuing failure to train, supervise,

or discipline its police force")"  Further, the Plaintiff alleged, that the past and present ratification

of excessive force by CSPD and Defendant Colorado Springs condones the use of excessive force by CSPD officers, including the excessive force used against Mr. Root. Further, the Plaintiff alleged that  Defendant Colorado Springs knew or should have known that its acts or omissions were substantially certain to cause CSPD officers including Defendant Comstock to violate individuals' constitutional rights to be free from excessive force, and they consciously or deliberately chose to disregard this risk of harm in adhering to their policy, custody, or practice of failing to provide that CSPD officers can only use force against fleeing persons only within constitutional limits, and/or in deliberately choosing not to provide adequate training to CSPD officers in this area. Finally, the Plaintiff alleged that the Defendant Colorado Springs set in motion a series of events that it knew would cause an individual in a similar situation as Mr. Root to be deprived of the constitutional right to be free from excessive force at the hands of law enforcement. But for the above acts or omissions of Defendant Colorado Springs, Mr. Root would not have been subjected to a violation of his Fourth Amendment rights, and such a deprivation was a proximate cause and a natural and foreseeable consequence of these acts and omissions. As explained above, plaintiff must allege sufficient facts to show that it is plausible (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. Jiron v. City of Lakewood, 392 F.3d 410, 419 (10th Cir. 2004).  As stated above, Jiron requires that the municipal policy at issue was "the moving force behind the constitutional deprivation." 392 F.3d at 419. The Plaintiff has  sufficiently alleged that the City of Colorado Spring  municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. Further, the Tenth Circuit has acknowledged that in Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit, 507 U.S. 163, (1993) ("We think that it is impossible to square the

`heightened pleading standard' applied by the Fifth Circuit in this case with the liberal system of `notice pleading' set up by the Federal "Rules")., "the Supreme Court declined to apply a heightened pleading standard to § 1983 claims against municipalities." <u>Scott v. Hern</u>, 216 F.3d 897, 907 (10th Cir. 2000) (distinguishing typical municipal liability claims from § 1983 conspiracy claims).  It is clear that "local governments, like every other § 1983 `person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental `custom' even though such a custom has not received formal approval through the body's official decision-making channels." <u>Monell</u>, 436 U.S. at 690-91. Because no heightened standard exists for pleading a § 1983 claim against a municipality, Ms. Root needs only to plead sufficient facts to show that it is plausible that (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. <u>Jiron</u> at. 419.

## CONCLUSION

WHEREFORE, for the above reasons, the Plaintiff respectfully request that this Honorable Court Deny the Defendants' motion to dismiss the Plaintiff's Amended Complaint, and for any further relief this Court deems appropriate.

Respectfully submitted this 19th day of August 2024.


THE LAW OFFICES OF HARRY M. DANIELS, LLC

/s/Harry M. Daniels
Harry M. Daniels

4751 Best Road Suite 490
Atlanta, GA 30337
Tel. 678.664.8529
Fax. 800.867.5248
daniels@harrymdaniels.com

**JOLLY LAW, P.L.L.C**

Tyler A. Jolly, #52361

9996 W U.S. Highway 50, Unit 1090
Salida, CO 81201
Phone: 719-429-7359
Tyler@jollylawcolorado.com

CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August 2024, the foregoing PLAINTIFF'S  RESPONSE

TO THE  DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) was filed

using the CM/ECF e-filing system, which will send notice to the following:

Brian Matthew Stewart
Colorado Springs City Attorney's Office
30 South Nevada Avenue
Suite 501
Colorado Springs, CO 80903
719-385-5909
Email: Brian.Stewart@coloradosprings.gov

/s/Harry M. Daniels
Harry M. Daniels