**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:24-cv-01293-DDD-TPO

JACOB ROOT,

    Plaintiff,

v.

OFFICER ROBERT COMSTOCK, in his individual capacity;
CITY OF COLORADO SPRINGS, a municipality,

    Defendants.

## ORDER GRANTING MOTION TO DISMISS

While running away from police, Plaintiff Jacob Root was tased by Colorado Springs Police Officer Robert Comstock and fell to the ground. In the fall, Mr. Root broke his neck and is now quadriplegic. He brings state and federal claims of excessive force against Officer Comstock and against the City of Colorado Springs for failure to adequately train its officers. *See* Dkt. 6 at 16–25. The Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 12. For the reasons below, the motion is granted.

### LEGAL STANDARD

A court's role in addressing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the

- 1 -

plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted)." But "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (quoting in part Fed. R. Civ. P. 8(a)(2)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). So, a court can "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## BACKGROUND

Mr. Root alleges that on May 16, 2022, "thirteen law enforcement officers across three agencies [] were working together as part of the "BATTLE" (Beat Auto Theft Through Law Enforcement) task force," which included Officer Comstock. Dkt. 6 at 3. About ten days prior, the task force officers had received a report that an unlocked 2017 Ford Fusion was stolen from a parking lot near the complaining witness's home sometime during the night. *Id*. at 4. On May 16, members of the task force spotted that car unoccupied in the parking lot of a Super 8 Motel in Colorado Springs. *Id*. Rather than recover the car, "the task force members affixed a tracking device to [it]" and later tracked it to another hotel. *Id*. When officers arrived there, they waited for the driver to return to the car and, when he did, "attempted to block [him] from leaving the parking lot." *Id*. The driver was able to evade the police cruisers, however, "colliding and causing damage to [one] in the process." *Id*. At

that point, the task force officers did not pursue the car, but "later tracked [it] to a Kum & Go gas station on Airport Road in Colorado Springs" with Mr. Root inside. *Id.* at 5.

The Amended Complaint then alleges that officers observed Mr. Root "get out of his car and enter the gas station." *Id.* "While Mr. Root was in the gas station, the task force members surrounded the building and parking lot." *Id.* They then observed Mr. Root "exit[] the gas station" and "[u]pon seeing the officers, [] run past the gas pumps and towards the sidewalk on Airport Road." *Id.* As Mr. Root was running, one officer "shot at [him] with a 'Bola Wrap,'" which missed.[1] *Id.* Officer Comstock was also chasing Mr. Root on foot by this point and, while Mr. Root was "running down the elevated slope dividing the gas station from the sidewalk on Airport Road," "without warning Mr. Root he would use his TASER weapon," Officer Comstock tased him in the back. *Id.* Mr. Root, who "experienced muscular incapacitation upon being shot" and "could not use his hands or arms to break his fall, fell head-first down the decline, across the sidewalk, and off the curb down into the street." *Id.* at 5–6. Because Mr. Root "broke his neck during the fall," he "remained face down in the street, face bloodied and groaning in agony, as officers surrounded him and placed him in handcuffs." *Id.* at 6. At the time he was tased by Officer Comstock, Mr. Root alleges that he did not have a weapon on him, did not make verbal threats that he was armed or intended to use force against anyone, did not use force against anyone, and was running away from police. *Id.*

The Amended Complaint also contains a number of allegations regarding the City of Colorado Springs's "custom and practice of using and

---

[1] A Bola Wrap is a hand-held remote restraint device that deploys a Kevlar cord to wrap around an individual's legs or arms to prevent them from moving.

- 3 -

ratifying excessive force":

> 29. It has long been the custom and actual practice of CSPD to engage in, encourage, and condone the use of excessive force by CSPD officers.
>
> 30. Colorado Springs did not terminate or discipline Defendant Comstock for his actions against Mr. Root. Further, CSPD did not recommend any further training or counseling for Defendant Comstock, despite his actions against Mr. Root.
>
> 31. Colorado Springs' and the CSPD's official position regarding the shooting of Mr. Root in the back, causing him to fall and break his neck, was and is that Defendant Comstock's actions were appropriate, consistent with, and engaged in pursuant to all approved police policies, practices and training of the City of Colorado Springs and the CSPD.
>
> 32. This ratification of the conduct that caused Mr. Root's quadriplegia is not alleged as proof that this ratification itself "caused" Mr. Root's injuries. Rather, it is evidence that the conduct was engaged in pursuant to policy, custom, and practice of the CSPD.
>
> 33. Defendant Comstock acted intentionally, knowingly, willfully, wantonly, maliciously and/ or recklessly in disregard to Mr. Root's federal protected rights, and acted under the preexisting and ongoing deliberately indifferent custom, policy, practice, training, and supervision of Defendant Colorado Springs acting under color of state law.
>
> …
>
> 45. Defendant Colorado Springs knew, based on its long history and widespread practice of its officers using excessive force and its condoning of those actions, that its officers would likely use excessive and unnecessary force against persons like Mr. Root.
>
> …
>
> 47. Defendant Colorado Springs has a policy that trains and tolerates its officers who use excessive and deadly force, even under circumstances where the officer or a third party is not at the time in imminent risk of death or serious bodily injury.
>
> …

>   49. Because Defendant Colorado Springs created and tolerated a custom of deliberate indifference and failed to adequately train and supervise CSPD officers in the constitutional use of force, individuals, like Mr. Root, have repeatedly been subjected to violations of their constitutional rights.
>
>   50. Defendant Colorado Springs fostered a policy of inaction in the face of knowledge that CSPD officers were frequently violating specific constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, which is the functional equivalent of a decision by Colorado Springs itself to violate the Constitution.
>
>   …
>
>   54. CSPD's approval and defense of the use of excessive force by CSPD employees sends a clear and unequivocal message to those employees—such approval and failure to appropriate respond actually *trains* CSPD law enforcement officers—that such use of excessive force is acceptable, consistent with policy, and is approved practice, causing the use of such excessive force to be likely or even inevitable in the future.
>
>   …
>
>   57. Defendant Colorado Springs' acts or omissions caused Mr. Root damages, because he suffered quadriplegia, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, among other injuries, damages, and losses.

*Id.* at 7–16.

As support for the above allegations against the City, the Amended Complaint also lists alleged prior victims of the City's excessive force policies: De'Von Bailey (*Id.* at 8), Dalvin Gadson (*Id.* at 8–9), Tyrone Moss (*Id.* at 9), Michael Sexton (*Id.* at 10), Jeffrey Melvin (Id. at 10–11), Ryan and Joey Brown (*Id.* at 11), Grant Bloomquist (*Id.* at 11–12), John Sturgis (*Id.* at 12), and Douglas Sellier (*Id.* at 12–13).

# DISCUSSION

Mr. Root's first claim for relief contends the actions of Officer Comstock amount to excessive force in violation of the Fourth Amendment. *Id.* at 16–17. His second claim is based on the same conduct and alleges a violation of Colorado Constitution Article II, Section 7. *Id.* at 20–22. His third claim contends the City of Colorado Springs's "policies, customs, and practices" violated Mr. Root's rights by failing to train or supervise police officers to prevent them from using excessive force against fleeing persons. *Id.* at 22–25.

## I.   Fourth Amendment

A Fourth Amendment excessive-force claim is governed by an objective standard: "A police officer violates an arrestee's ... Fourth Amendment right to be free from excessive force during an arrest if the officer's actions were not 'objectively reasonable' in light of the facts and circumstances confronting him." *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1213 (10th Cir. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (further quotation omitted). To determine the objective reasonableness of the use of force, a court "must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *McCoy v. Meyers*, 887 F.3d 1034, 1045 (10th Cir. 2018) (quoting *Graham*, 490 U.S. at 396). In conducting this balancing, three factors should be considered: "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396) (alteration omitted). "Ultimately the inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Pauly v. White*, 874 F.3d 1197, 1215 (10th Cir. 2017)

(internal quotations omitted).

Even accepting Mr. Root's allegations in the Amended Complaint as true and construing them in their most favorable light, the totality of the circumstances alleged justified Officer Comstock's use of force. According to the Amended Complaint, by the time Officer Comstock was pursuing Mr. Root at the gas station on Airport Road, he had reason to suspect Mr. Root already committed two dangerous felonies—the first by stealing a car, and a second by using that car to evade pursuing police officers (and striking a police cruiser along the way). *See* Dkt. 6 at 4. This would have put all officers involved on notice that the suspect presented a credible threat to their safety and that of the public. *See Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021) ("[O]ur binding precedent indicates the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent.").

When officers later confronted Mr. Root after he emerged from the gas station, he resisted arrest and proceeded to run towards a busy roadway, which created an immediate safety risk to motorists and the officers in pursuit. Dkt. 6 at 5. This too adds to the reasonableness of the use of a taser. *See Ill. v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion[.]"). One officer in pursuit then fired a Bola Wrap at Mr. Root. Though it missed, this action gave non-verbal notice of officers' attempts to use force to apprehend him. *See Palacios v. Fortuna*, 61 F.4th 1248, 1259 (10th Cir. 2023) ("[A] warning does not need to be specifically that officers are about to open fire."). When Mr. Root refused to stop and proceeded to run towards a busy roadway, Officer Comstock made a split-second decision to fire his taser at him. Dkt. 6 at 5; *see Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 761 (10th Cir. 2021) (The "calculus of reasonableness must [also] embody allowance for the fact that police officers are often

- 7 -

forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

No one disputes the tragedy that occurred next—Mr. Root's temporary muscular incapacitation resulting from the taser prevented him from breaking his fall, and he fell head-first down a decline, across a sidewalk, and into the street, breaking his neck and rendering him quadriplegic. Dkt. 6 at 5–6. But that devastating outcome does not factor into the analysis which must focus on what the officer knew *before* the decision to use force. *U.S. v. Madrid*, 713 F.3d 1251, 1255 (10th Cir. 2013) (The use of force analysis is an objective standard that asks whether the "facts available to the officer at the moment of the seizure would warrant a man of reasonable caution that the action taken was appropriate.") (cleaned up). And in the totality of circumstances alleged, Officer Comstock's use of force was not unreasonable. Those circumstances included a suspected felon who had struck a police vehicle while fleeing from officers, who had not responded to multiple lesser uses of force, and who was creating an apparent danger to himself and the public by running towards a busy street. Use of a taser in such circumstances was well within the bounds of options a reasonable officer might select.[2] *See Wilson v. City of Lafayette*, 510 F. Appx 775, 777 (10th Cir. 2013) (cert. denied) (Gorsuch J.) (holding that an officer's actions were

---

[2] Mr. Root claims Officer Comstock's use of a taser amounted to deadly force in violation of the Fourth Amendment and Colorado Springs Police Department's procedures. *See* Dkt. 22 at 7–16. But Mr. Root provides no details describing the elevated position he was allegedly in—nothing regarding the height he was at vis-à-vis the ground (or that he was even off the ground), or the degree of decline he was running down—and the cases he cites in support of this claim are remarkably dissimilar to the facts he alleges, *viz.*, he was not on a wall, ledge, ladder, roof, or fence off the ground. *See id.* at 9–10. The danger here was not such that using a taser was likely to cause death.

reasonable and did not amount to excessive force under the Fourth Amendment even though he tased a fleeing felon and one of the taser probes struck the suspect in the head and killed him); *Coronado v. Olsen*, No. 2:18-CV-83, 2020 WL 5821220, at *6 (D. Utah Sept. 30, 2020), *aff'd*, No. 20-4118, 2022 WL 152124 (10th Cir. Jan. 18, 2022) (finding that officers acted reasonably when they used tasers to stop the advancement of an unarmed and half naked suspect who after being tased, tragically struck his head and suffered a brain injury). Accordingly, Mr. Root's claim of excessive force in violation of the Fourth Amendment must be dismissed.

But even if one concluded Officer Comstock's conduct violates the Fourth Amendment, Mr. Root's claim would still have to be dismissed under the second prong of qualified immunity. *See Heard v. Dulayev*, 29 F.4th 1195, 1203 (10th Cir. 2022) ("[T]he plaintiff must 'identify a case where an officer acting under similar circumstances … was held to have violated the Fourth Amendment.'") (quoting *D.C. v. Wesby*, 583 U.S. 48, 64 (2018). Mr. Root has not provided any cases with facts similar enough to put reasonable officers on notice that use of a taser was unconstitutional in these circumstances. And in fact, the cases show otherwise. *See, e.g., Wilson, Coronado, supra*. Under either prong of qualified immunity, the claim against Officer Comstock must be dismissed.

## II.     Municipal Liability

Under Section 1983, "local governments are responsible only for "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277,

1284 (10th Cir. 2019). Therefore, to state a plausible claim against the City of Colorado Springs, Mr. Root must show that the execution of an illegal policy inflicted his injury. *Id.* He also "must demonstrate a direct causal link between the policy or custom and the injury alleged." *Id.* at 1284.

Mr. Root's conclusory allegations that the City maintains a general policy that condones and ratifies acts of excessive force are insufficient to state a claim on this basis. The Amended Complaint fails to identify any policy that condones excessive force, and it fails to allege the City's actual excessive force or taser policies are unconstitutional.[3] Instead, Mr. Root relies on ratification and custom or practice theories of liability. As to the former, he alleges that because the City "did not terminate or discipline Defendant Comstock for his actions, … did not recommend any further training or counseling for [him]," and found that his "actions were appropriate, consistent with, and engaged in pursuant to all approved police policies, practices, and training," then it necessarily has "a custom or policy of using and ratifying excessive force." Dkt. 6 at 7. He states, "[h]ad Defendant Comstock's actions been outside of the policy, disciplinary or remedial action would have been taken." *Id.* This sort of circular reasoning is generally insufficient to establish municipal liability under a ratification theory even if the underlying action was unconstitutional. *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010) ("[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions."). But even if a lack of known discipline itself were sufficient in some cases, it is not here because the underlying actions were not unconstitutional.

---

[3] Mr. Root even appears to argue that the City's Use of Force policy was *violated* by Officer Comstock. *See* Dkt. 6 at 1.

- 10 -

Mr. Root also describes nine other incidents he says show the City had a custom or policy of allowing police officers to use excessive force. *See*. Dkt. 6 at 7–16. But while at this stage the Court is required to accept all well-pleaded allegations as true, it need not recognize conclusory statements predicated on dissimilar or dubious examples of excessive force. Even if nine other cases were sufficient in a city the size of Colorado Springs to show an established custom or policy, these cases are not similar enough to do so.[4] *See Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (noting that when "attempting to prove the existence of such a 'continuing, persistent and widespread' custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way.").

Mr. Root's examples do not show deliberate indifference to the likelihood that force would be used unconstitutionally in these circumstances. Absent this, "the City cannot be held liable for its failure to train or supervise its [police officers because] the City's policymakers [cannot]

---

[4] The examples cited are not similar enough to create municipal liability. Mr. Root's first example does not involve a taser and does not mention the crimes the officers were investigating. Dkt. 6 at ¶ 35. And even there, the officers first ordered the suspect to stop before shooting. *Id*. Mr. Root's second, seventh, and eighth examples do not involve a taser or a fleeing suspect. *Id*. at ¶¶ 36, 41–42. In Mr. Root's third example, the officers, who were investigating a call about an individual with a firearm, gave the suspect, who was not running away, a clear warning before using the taser. *Id*. In Mr. Root's fourth example, which did not involve a taser or a fleeing suspect, the claims of excessive force were dismissed. *Id*. at ¶ 38; *see Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1063 (D. Colo. 2021). Mr. Root's fifth example does not allege a tasing while the suspect was in flight or a failure to warn. Dkt. 6 at ¶ 39. Mr. Root also fails to note that the Tenth Circuit granted the involved officers qualified immunity. *See Est. of Melvin, v. City of Colo. Springs*, No. 23-1070, 2023 WL 8539921, at *6 (10th Cir. Dec. 11, 2023). In the sixth example, the officers did not tase or chase the suspects. Dkt. 6 at ¶ 40. And Mr. Root's ninth example does not allege a flight or a failure to warn. *Id*. at ¶ 43.

reasonably be said to have been deliberately indifferent to the need for further training or supervision." *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir. 2010). And because "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [its] actions that will cause violations of constitutional rights," to survive Defendants' motion to dismiss, Mr. Root must have at least alleged the City was on notice that its "course of training [with respect to tasers was] deficient in a particular respect" and directly caused Mr. Root's injury. *Waller*, 932 F.3d at 1284–85 (cleaned up); *see also Irizarry v. City & Cnty. of Denver*, No. 21-CV-01490-PAB-SKC, 2023 WL 2528782, at *12 (D. Colo. Mar. 15, 2023) (allegations which do not show how a police officer was trained, who trained him, or how his training is deficient, do not state a plausible claim for relief). He has not done so here.

Mr. Root has also not alleged facts that plausibly suggest there was an unofficial widespread custom of using excessive force. On this score, he asserts a single conclusory allegation, *see* Dkt. 6 at ¶ 45, which does not suffice to show a widespread custom. And even if the nine examples Mr. Root describes were on point, it is not clear that would suffice to create municipal liability. Higher courts have not put forward a numerical standard for how many prior cases suffice to show a pattern or practice. *Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1039 (D.N.M. 2019) (quoting *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981) ("[T]he mere allegation of a single act of unconstitutional conduct by a municipal employee will not support the inference that such conduct was pursuant to official policies.")). Nine is a small numerator over what would be a relatively large denominator—the number of interactions between subjects and police in a city the size of Colorado Springs over fifteen years. *Cf. Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for

establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice."); *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (explaining that two instances of misconduct "do not indicate a 'persistent and widespread' pattern of misconduct that amounts to a city custom or policy of overlooking police misconduct"). Given this and that the nine examples are not sufficiently similar to Mr. Root's facts, he has not alleged plausible facts to show a widespread custom by the City of using excessive force. Instead, Mr. Root simply states that the City, the police department, and the chief of police "ratified the excessive force of their officers through failure to investigate, failure to counsel, and failure to discipline officers who use excessive force." Dkt. 6 at 24. Without more details, these allegations are conclusory at best and cannot serve as a basis for a claim for relief. Accordingly, Mr. Root's claim against the City of Colorado Springs is dismissed.

### III.   State Claim

Because the federal claims that were the basis for this court's jurisdiction must be dismissed, Mr. Root's state claim against Officer Comstock is also dismissed. 28 U.S.C. § 1367(c)(3); *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010).

## CONCLUSION

It is **ORDERED** that:

Defendants' Motion to Dismiss, **Dkt. 12**, is **GRANTED** and Plaintiff's complaint is dismissed without prejudice.

DATED: March 3, 2025				BY THE COURT:

~~Daniel D.~~ Domenico
United States District Judge